IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RONALD JACKSON, | No. 3:18-CV-01290 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| SCI HUNTINGDON PRISON OFFICIALS, *et al.*, | |
| Defendants. | |

**MEMORANDUM OPINION**

**NOVEMBER 9, 2022**

*Pro se* Plaintiff Ronald Jackson ("Plaintiff"), who is currently incarcerated at the State Correctional Institution-Pine Grove ("SCI-Pine Grove") and was incarcerated at the State Correctional Institution-Huntingdon ("SCI-Huntingdon") for most of the period relevant to this case, alleges various civil rights violations by SCI-Huntingdon officials. The case is currently proceeding on Plaintiff's second amended complaint. Defendants have moved for judgment on the pleadings. For the reasons that follow, the motion for judgment on the pleadings will be granted in part and denied in part, the remaining claims will be dismissed for failure to state a claim upon which relief may be granted, and the case will be closed.

**I.     BACKGROUND**

Plaintiff initiated this case through the filing of a complaint on June 27, 2018, alleging that various officials at SCI-Huntingdon were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment and that they retaliated

against him for the filing of grievances in violation of the First Amendment.[1] Defendants moved to dismiss the complaint on March 1, 2019.[2] The Court subsequently granted Plaintiff leave to amend,[3] and Plaintiff filed an amended complaint on February 24, 2020.[4] Defendants again moved to dismiss.[5]

I granted the motion to dismiss through a Memorandum and Order on November 25, 2020.[6] I found that dismissal of all claims against Defendants Kauffman, Ellenberger, and Price was appropriate because Plaintiff failed to allege their personal involvement in the alleged civil rights violations.[7] I further found that the various alleged Eighth Amendment violations did not state a claim upon which relief could be granted.[8] Specifically, I found that (1) Plaintiff's allegation that he was made to pay copays for his medical treatment did not state a claim, as Plaintiff did not allege that he was denied necessary medical care or that any such care was delayed as a result of the copay requirement; (2) Plaintiff's allegation that Defendant Emigh had not provided him with some unspecified medication did not state a claim, as there were no specific facts alleged to support the allegation; (3) Plaintiff's allegation that he was denied treatment for an ingrown toenail failed to state a claim, as Plaintiff failed to allege which defendants were personally involved in the alleged

---

[1] Doc. 1.
[2] Doc. 16.
[3] Doc. 33.
[4] Doc. 45.
[5] Doc. 48.
[6] Doc. 67-68.
[7] Doc. 67 at 8.
[8] *Id.* at 9-11.

constitutional violation; and (4) the allegation that Defendant Pyle failed to call Plaintiff for Plaintiff's surgery appointment did not state a claim, as the alleged wrongdoing simply did not rise to the level of a constitutional violation.[9] Finally, I concluded that dismissal of Plaintiff's retaliation claims was appropriate, as Plaintiff had not identified which Defendants had committed which retaliatory acts and had not alleged a causal connection between his protected conduct and the defendants' allegedly retaliatory actions.[10] I accordingly dismissed the complaint without prejudice and granted Plaintiff leave to file a second amended complaint.[11]

Plaintiff filed his second amended complaint on December 21, 2020.[12] I *sua sponte* dismissed the claims raised in the second amended complaint against Kauffman, Ellenberger, and Price on April 23, 2021 and additionally dismissed Plaintiff's Eighth Amendment claim arising from the payment of copays.[13] The remaining defendants moved to dismiss the second amended complaint on August 8, 2021.[14] I denied the motion on December 15, 2021, noting that although the motion ostensibly sought dismissal of the second amended complaint, the text of the motion and its supporting brief "completely ignore the specific allegations of the second amended complaint" and instead pertained only to allegations raised in the original

---

9   *Id.*
10  *Id.* at 12-14.
11  Doc. 68.
12  Doc. 70.
13  Doc. 73.
14  Doc. 78.

complaint.[15]  I accordingly found the arguments for dismissal moot as they argued for dismissal of a moot complaint.[16]

Defendants answered the second amended complaint on February 28, 2022.[17]  I issued a case management order shortly thereafter setting deadlines for the completion of fact discovery and the filing of dispositive motions.[18]  Those deadlines were subsequently extended—the deadline for fact discovery expired on September 30, 2022 and dispositive motions are currently due no later than November 30, 2022.[19]  Prior to the discovery deadline, Plaintiff moved to compel discovery on August 15, 2022.[20]  That motion is also pending.[21]

Defendants filed the instant motion for judgment on the pleadings on September 22, 2022.[22]  Defendants seek judgment on the pleadings on the basis of *res judicata* based on the Pennsylvania Commonwealth Court's 2019 decision in parallel state court litigation.[23]  Plaintiff has not filed a brief in opposition to the motion, and the deadline for doing so has expired under the Local Rules.  Accordingly, the motion is ripe for disposition.

---

[15]  Doc. 83 at 2.
[16]  *Id.* at 3.
[17]  Doc. 84.
[18]  Doc. 85.
[19]  Doc. 87.
[20]  Doc. 88.
[21]  As discussed *infra*, I will deny the motion as moot.
[22]  Doc. 92.
[23]  *See* Docs. 92-93; *Jackson v. SCI-Huntingdon Prison Officials*, No. 365 C.D. 2018, 2019 WL 6114473 (Pa. Commw. Ct. Nov. 18, 2019).

## II. LAW

When considering a motion for judgment on the pleadings, courts use the same standard employed when considering a motion to dismiss for failure to state a claim.[24] Therefore, a court assumes the truth of all factual allegations in the plaintiff's complaint and draws all inferences in favor of that party.[25] It does not, however, assume the truth of any of the complaint's legal conclusions.[26] Judgment on the pleadings cannot be granted "unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law."[27]

## III. PLAINTIFF'S SECOND AMENDED COMPLAINT

In his second amended complaint, Plaintiff alleges that he requested a renewal of prescription medication that is not sold in the prison commissary and that the prison told him he would have to pay a copay to receive the medication.[28] Plaintiff requested a refund of the copay, but his request was denied by Defendant Harker.[29] Plaintiff filed a grievance complaining about this, which was denied by Defendant Price.[30] He

---

[24] *Huertas v. Galaxy Asset Management*, 641 F.3d 28, 32 (3d Cir. 2011).
[25] *Phillips v. County of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008)
[26] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Connelly v. Lane Construction Corp.*, 809 F.3d 780, 786 (3d Cir. 2016).
[27] *In re Asbestos Prods. Liab. Litig. (No. VI)*, 822 F.3d 125, 133 n.6 (3d Cir. 2016) (quoting *Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 290-91 (3d Cir. 1988)).
[28] Doc. 70 at 3.
[29] *Id.*
[30] *Id.*

5

then appealed again to the prison's superintendent, Defendant Kauffman, who denied the appeal.[31]

Plaintiff alleges that he went to "pill line" for his medication on May 25, 2017 and requested that Defendant Emigh, who was the prison staff member in charge of the pill line, "crack" his medication rather than crush it.[32] Emigh allegedly "became offended and started swearing."[33] Shortly after this incident, Emigh allegedly completed a misconduct report that resulted in Plaintiff being placed in punitive segregation.[34] Plaintiff then had a second interaction with Emigh at pill line, and Emigh again crushed his medication rather than cracking it.[35] Plaintiff filed a grievance complaining about Emigh's conduct, but the grievance was denied.[36] After Plaintiff filed the grievance, Emigh allegedly enlisted other prison officials to help her retaliate against Plaintiff.[37] Defendants Pyle, Manello, and Grove allegedly confiscated some of Plaintiff's personal property as part of this retaliatory effort.[38] Emigh, Pyle, Manello, and Grove allegedly conspired with one another to falsify a misconduct report against Plaintiff in retaliation for his actions.[39]

---

[31] *Id.*
[32] *Id.* at 4.
[33] *Id.*
[34] *Id.*
[35] *Id.*
[36] *Id.*
[37] *Id.*
[38] *Id.*
[39] *Id.* at 5.

In August 2017, Plaintiff signed a sick call slip for a procedure to repair an ingrown toenail.[40] Plaintiff was allegedly charged a $5 copay for this procedure.[41] He requested a refund, but his request was denied.[42] Plaintiff's procedure was scheduled for August 22, 2017.[43] He was allegedly out in the prison yard on that date, and when he came in from the yard, "PA Line was just being call[ed]."[44] Plaintiff allegedly missed his appointment because he had missed the call.[45]

Plaintiff alleges that on November 6, 2017, Defendant Pyle and another correctional officer searched Plaintiff's cell and that during the search they planted drugs in the cell.[46] The officers allegedly falsified a report about the incident, which led to misconduct charges against Plaintiff.[47] Plaintiff alleges that various violations of his right to due process occurred during the resulting disciplinary hearing.[48]

In October 2017, Plaintiff allegedly filed a lawsuit in the Court of Common Pleas of Huntingdon County against Defendants Manello, Pyle, and Grove.[49] As part of this lawsuit, the court's prothonotary mailed certain documents to Plaintiff.[50] Plaintiff alleges that Manello, Pyle, and Grove interfered with his mail when these

---

40  *Id.*
41  *Id.*
42  *Id.*
43  *Id.*
44  *Id.*
45  *Id.*
46  *Id.* at 8.
47  *Id.*
48  *Id.*
49  *Id.* at 9.
50  *Id.*

documents were sent by the prothonotary, which led to Plaintiff never receiving the documents.[51]

Plaintiff alleges that he was transferred to the prison's restricted housing unit ("RHU") for a period of eight months at some unspecified point in time.[52] He alleges that while he was in the RHU, he was housed in a cell that had feces smeared on the walls and flies buzzing around the cell.[53] He also was allegedly denied meals on several occasions while in the RHU.[54]

Plaintiff further alleges that he was transferred to SCI-Pine Grove in retaliation for his filing of grievances.[55] Upon his transfer to SCI-Pine Grove, he noticed that some of his property was damaged.[56] He alleges that Defendant Grove was responsible for the damage to his property and that he damaged the property in retaliation for Plaintiff filing grievances.[57]

Thus, based on my review of the second amended complaint, I construe the complaint as raising nine claims: (1) a claim that Plaintiff had to pay copays for his medication; (2) a claim that Plaintiff was subjected to retaliation arising from Plaintiff's filing of grievances; (3) a claim that Plaintiff had to pay copays for treatment of his ingrown toenail; (4) a claim that Pyle and another officer planted contraband in Plaintiff's cell and initiated fraudulent disciplinary proceedings against

---

[51] *Id.*
[52] *Id.* at 11.
[53] *Id.*
[54] *Id.*
[55] *Id.* at 7.
[56] *Id.* at 15.
[57] *Id.*

him based on the planted contraband; (5) a claim that Plaintiff's due process rights were violated during the resulting disciplinary proceedings; (6) a claim that Manello, Pyle, and Grove interfered with Plaintiff's mail in connection with his then-pending state court litigation; (7) a claim that conditions in the RHU violated the Eighth Amendment; (8) a claim that Plaintiff was retaliatorily transferred to SCI-Pine Grove; and (9) a claim that Plaintiff's personal property was damaged when he was transferred to SCI-Pine Grove.

## IV.   PLAINTIFF'S STATE COURT LITIGATION

On February 5, 2018, Plaintiff initiated an action against various SCI-Huntingdon prison officials in the Huntingdon County Court of Common Pleas.[58] Plaintiff did not file a complaint to initiate the case; instead he filed a civil cover sheet and three documents titled "Summons," "Memorandum of Law in Support of Claimant's Motion for a Temporary Restraining Order and Preliminary Injunction," and "Declaration in Support of Order to Show Cause for Temporary Restraining Order and Preliminary Injunction."[59]  The documents alleged that the defendants violated his constitutional rights by deducting copayments for medical services from his prisoner trust account, denied him treatment from a podiatrist for his ingrown toenail, and retaliated against him for the filing of grievances.[60]

---

[58]  See Jackson, 2019 WL 6114473, at *1.
[59]  Id.
[60]  Id.

The Court of Common Pleas dismissed the case as frivolous on March 5, 2018.[61] Shortly thereafter, Plaintiff filed a document titled "Complaint Pursuant to Civil Action."[62] Plaintiff appealed the dismissal of his action to the Pennsylvania Commonwealth Court, which prompted the Court of Common Pleas to issue an opinion pursuant to Pennsylvania Rule of Appellate Procedure 1925(a)(1).[63] Because the Court of Common Pleas dismissed the action as frivolous on March 5, 2018, prior to the filing of Plaintiff's "Complaint Pursuant to Civil Action," the court did not consider the complaint in its Rule 1925(a)(1) opinion.[64] The Court of Common Pleas held that its dismissal of the case as frivolous was appropriate.[65] The Commonwealth Court affirmed on November 18, 2019.[66]

## V.     ANALYSIS

### A.     Res Judicata

Defendants seek judgment on the pleadings on the basis of *res judicata*. The doctrine of *res judicata*, also known as claim preclusion, precludes relitigation of claims that were previously raised, or could have been raised, in a prior case in which a final judgment was entered on the merits.[67]

---

[61]   *Id.*
[62]   *Id.*; This document is docketed in the instant case as Doc. 92-3.
[63]   *Id.*
[64]   *Id.* at *1 n.3.
[65]   *Id.* at *1.
[66]   *Id.* at *4.
[67]   *Beasley v. Howard*, 14 F.4th 226, 231 (3d Cir. 2021).

The preclusive effect of a state court judgment is determined by the law of that state.[68]  Under Pennsylvania law, a claim is barred by *res judicata* if there is "(1) identity of issues; (2) identity in the cause of action; (3) identity of persons and parties to the action; and (4) identity of the capacity of the parties suing or being sued."[69]  Identity of parties is established if the parties to the previous lawsuit or their privies are named as parties in the current suit.[70]  Privity between parties is "mutual or successive relationships to the same right of property, or such an identification of interest of one person with another as to represent the same legal right."[71]

The Pennsylvania courts' dismissal of Plaintiff's previous action was a judgment on the merits for purposes of *res judicata*.[72]  Accordingly, I turn my attention to whether there is identity of claims, causes of action, parties, and capacities.

### 1. Identity of Claims and Causes of Action

I first consider whether there is identity of claims and causes of action between the claims raised in the instant case and the previous state court proceeding.  For purposes of this analysis, I divide Plaintiff's claims into three discrete tranches.

First, and most clearly, there is identity of claims and causes of actions with respect to Plaintiff's first three claims—that he had to pay copays for his medication,

---

[68] *Secretary United States Department of Labor v. Kwasny*, 853 F.3d 87, 94 (3d Cir. 2017).
[69] *In re Estate of Plance*, 175 A.3d 249, 267 (Pa. 2017).
[70] *R/S Financial Corp. v. Kovalchick*, 716 A.2d 1228, 1230 (Pa. 1998) (citing *Balent v. City of Wilkes-Barre*, 669 A.2d 309, 313 (1995)).
[71] *Kwasny*, 853 F.3d at 95.
[72] *See, e.g.*, *United States Nat'l Bank in Johnstown v. Johnson*, 487 A.2d 809, 813 (Pa. 1985).

11

that he had to pay copays for the treatment of his ingrown toenail, and that he was subjected to retaliation for the filing of grievances—because all three claims were raised in the previous case and dismissed on their merits.[73]

Second, there is identity of claims and causes of action with respect to Plaintiff's fourth, fifth, sixth, and seventh claims—that Pyle and another officer planted contraband in Plaintiff's cell and initiated fraudulent disciplinary proceedings against him, that Plaintiff's due process rights were violated during the resulting disciplinary proceedings, that Manello, Pyle, and Grove interfered with Plaintiff's mail, and that the conditions in the RHU violated the Eighth Amendment. Although these claims were not decided on their merits in the state court proceeding, I find that the claims could have been raised in that proceeding. Notably, Plaintiff attempted to raise these claims in his complaint filed after the Court of Common Pleas dismissed the case.[74] Although the Court of Common Pleas and the Commonwealth Court declined to consider the claims because the complaint was filed after the case was dismissed as frivolous,[75] I find the fact that Plaintiff attempted to raise the claims persuasive as to the fact that the claims could have been raised in the state court litigation.

Finally, I conclude that there is not identity of claims or causes of action with respect to Plaintiff's last two claims—that he was retaliatorily transferred to SCI-Pine

---

[73] *See Jackson*, 2019 WL 6114473, at *2-4.
[74] *See* Doc. 92-3 at 65-76, 93-95.
[75] *See Jackson*, 2019 WL 6114473, at *1 n.3.

Grove and that his property was damaged during the transfer. These claims were not raised or decided on their merits in the state court litigation, and unlike Plaintiff's fourth, fifth, sixth, and seventh claims, there is no basis to conclude that the claims could have been raised in the state court litigation. It appears from the allegations in Plaintiff's second amended complaint that his transfer to SCI-Pine Grove occurred sometime in July 2018,[76] approximately four months after the Court of Common Pleas dismissed his state court case as frivolous.[77] Accordingly, I find that *res judicata* does not bar Plaintiff's eighth and ninth claims.[78]

### 2. Identity of Parties

On the second element of the *res judicata* analysis, I conclude that there is identity of parties between the present action and the state court action. Although there are slight differences in which individual defendants are named in each case,[79] the lead defendant named in each action is the catch-all "SCI Huntingdon Prison Officials."[80] By including this catch-all language, Plaintiff clearly intended to name as defendants any prison officials implicated by the allegations included in his complaints. Although "SCI Huntingdon prison officials" is not a proper defendant for purposes of a § 1983 action, I find the inclusion of this catch-all language sufficient to

---

[76] *See* Doc. 70 at 15.
[77] *See Jackson*, 2019 WL 6114473, at *4.
[78] As I explain *infra*, the claims will be dismissed on other grounds.
[79] *See* Docs. 70, 92-3; *Jackson*, 2019 WL 6114473, at *1.
[80] *See* Doc. 70; *Jackson*, 2019 WL 6114473, at *1.

13

establish privity between the parties in the present suit and the parties in the state court litigation.

### 3. Identity of Capacity

Finally, I consider whether there is identity of capacity between the instant case and the previous state court proceeding. This simply requires a determination as to whether the parties to the present case are acting in the same litigation capacities that they did in the prior lawsuit; i.e., the plaintiff in the present suit was acting as a plaintiff in the prior suit and the defendants in the present suit were acting as defendants in the prior suit.[81] I conclude that there is identity of capacity in the instant case as Jackson brought both cases as the plaintiff and the SCI-Huntingdon prison officials are named as defendants in both cases. Accordingly, having concluded that there was a prior judgment on the merits in state court and that there is identity of claims, causes of action, parties, and capacities between the two cases, I conclude that Plaintiff's first seven claims are barred by *res judicata*.

### B. Plaintiff's Transfer and Property Claims Will Be Dismissed

Although Plaintiff's eighth and ninth claims are not barred by the doctrine of *res judicata*, I will *sua sponte* dismiss them for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2).[82] Plaintiff's eighth claim alleges that he was transferred to SCI-Pine grove in retaliation for the filing of

---

[81] *See, e.g.*, *Munoz v. Sovereign Bank*, 323 F. App'x 184, 187-88 (3d Cir. 2009).
[82] 28 U.S.C. § 1915(e)(2) requires federal district courts to review complaints brought by plaintiffs proceeding *in forma pauperis* and dismiss them "at any time" if, *inter alia*, the complaints fail to state a claim upon which relief may be granted.

grievances.[83]  To state a retaliation claim upon which relief may be granted, a plaintiff must allege (1) that he engaged in constitutionally protected conduct; (2) that defendants engaged in retaliatory action against the plaintiff that would be sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) that there was a causal connection between the plaintiff's protected conduct and the defendants' retaliatory action.[84]  Here, Plaintiff does not allege any causal connection beyond the conclusory statement that his transfer was "because of" his grievances.[85]  Accordingly, I find that he has failed to state a retaliation claim upon which relief may be granted.

Plaintiff's ninth and final claim alleges that his personal property was damaged when he was transferred to SCI-Pine Grove.[86]  It is somewhat unclear whether Plaintiff intends to bring this claim as a due process claim, a tort claim, or a retaliation claim, but the claim fails to state a claim upon which relief may be granted under any theory because Plaintiff does not allege what damage was done to his property beyond the conclusory statement that he discovered "damage."[87]  Thus, I will dismiss Plaintiff's eighth and ninth claims *sua sponte* for failure to state a claim upon which relief may be granted.[88]

---

[83]  *See* Doc. 70 at 7.
[84]  *Javitz v. County of Luzerne*, 940 F.3d 858, 863 (3d Cir. 2019).
[85]  *See* Doc. 70 at 7.
[86]  *Id.* at 15.
[87]  *Id.*
[88]  Because I have concluded above that judgment on the pleadings is warranted as to Plaintiff's first seven claims and that dismissal of the eighth and ninth claims is warranted for failure to state a claim, I will deny Plaintiff's motion to compel discovery as moot.

## VI. CONCLUSION

For the foregoing reasons, Defendants' motion for judgment on the pleadings will be granted as to Plaintiff's first seven claims, Plaintiff's eighth and ninth claims will be dismissed, and Plaintiff's motion to compel discovery will be denied as moot.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge